Case 4:18-cv-04695   Document 217   Filed on 03/15/21 in TXSD   Page 1 of 8
United States District Court
Southern District of Texas
**ENTERED**
March 15, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ELIE NASSER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:18-CV-4695 |
| § | |
| FINANCE OF AMERICA REVERSE LLC, § | |
| *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

This consolidated action arises from a dispute involving the assessment of insurance premiums and related fees in a reverse mortgage transaction. Pending before the Court is the "Motion to Strike Complaint Originally Bearing Civil Action No. 4:20-CV-774 Now Consolidated With This Case" filed by defendants Reverse Mortgage Solutions, Inc.; Finance of America Reverse LLC; and First National Bank of Layton (collectively the "Defendants"). (Dkt. 152). After carefully reviewing the motion, response, reply, applicable law, and the entire record, for the reasons stated below this motion is **DENIED without prejudice.**

### BACKGROUND

Plaintiff, Dr. Elie Nassar ("Dr. Nassar") alleges that Defendants assessed insurance premiums and related fees against his account that were not owed and attempted to foreclose on the property that was the subject of a reverse mortgage

transaction in violation of Texas state and federal law.[1] (Dkt. 1-1 at pp. 3–9). Dr. Nassar's original complaint in Civil Action No. 4:18-CV-4695 ("Lead Case") complains of two sets of charges and fees that Defendants assessed against his account and that Dr. Nasser contends were not owed. The first charge was a $2,766.00 assessment for force-placed insurance and the fees related to this assessment. (Dkt. 1-1 at pp. 3–6). The second charge was a $7,780.00 assessment for an upfront mortgage insurance premium and the fees related to this assessment. (Dkt. 1-1 at pp. 6–9).

Later, Dr. Nassar filed an amended complaint omitting his allegations regarding the $2,766.00 assessment and related fees for the force-placed insurance premium and only complaining about the $7,780.00 assessment and related fees for the upfront mortgage insurance premium. (Dkt. 16 at p. 4). Almost a year later, Dr. Nassar filed another amended complaint, this time reasserting his claims related to the charges and fees for the $2,766.00 force-placed insurance premiums. (Dkt. 98 at p. 2) After a hearing, the Court struck the last amended complaint because it was untimely and filed without leave of the Court. (Dkt. 99)

Dr. Nassar then filed a new lawsuit against Defendants in a Texas state court asserting claims related to the $2,766.00 force-placed insurance premiums and related charges. Defendants removed the case to federal court where it was docketed as Civil Action No. 4:20-CV-774 ("Member Case") and consolidated with the Lead Case before this Court.

---

[1] Dr. Nasser is now proceeding in this case *pro se*.

Defendants have now filed the pending motion to strike the Member Case. Defendants argue that the Member Case should be stricken because the claims relating to the force-placed insurance premium and related fees set forth therein 1) were filed contrary to "the Federal Rules of Civil Procedure and this Court's Order or, at a minimum, the spirit of this Court's Order striking his … amended complaint that directly relates back, like this new lawsuit, to claims that [Dr. Nasser] could have raised, DID raise, and subsequently ABANDONED in this lawsuit."; 2) are barred by the equitable doctrines of estoppel; 3) are time barred and the doctrine of continuous violation does not apply to revive them; and 4) are moot because Defendants have already refunded the amounts at issue to Dr. Nassar. The Court considers these arguments below.

## ANALYSIS

First, the Court finds that neither its orders nor the Federal Rules of Civil Procedure prohibit Dr. Nassar from bringing the Member Case and asserting Dr. Nassar's claims regarding the $2,766.00 force-placed insurance assessment. It is true that the claims in the Member Case are essentially the same as those that Dr. Nassar unsuccessfully attempted to reassert in the Lead Case. And it is understandable that Defendants are unhappy with the prospect of having to defend against claims they thought were no longer part of this case. However, the fact remains that the force-placed insurance assessment claims were never dismissed with prejudice by the Court from the Lead Case—Dr. Nassar was only barred from bringing them as part of an amended complaint because they were untimely filed in violation of the Court's docket control order and without the Court's permission. (Dkt. 159). The Court never ruled on the merits

of these claims. Defendants have presented no caselaw support, nor has the Court found such support on its own, for the proposition that, following the Court's ruling, Dr. Nassar could not pursue these claims in a new lawsuit in state court. Nor have Defendants cited any Rule of Federal Procedure that would prohibit him from doing so.

Next, while Defendants argue that "[a]llowing Plaintiff to pursue these claims via a new lawsuit (now consolidated with this lawsuit) would make a mockery out of the Federal Rules of Civil Procedure and this Court's previous Orders" they do not cite any persuasive authority regarding any equitable doctrines that would apply, at this stage of the proceedings, to prohibit Dr. Nassar from pursuing his claims in the Member Case. Contrary to Defendants' arguments, the doctrine of collateral estoppel clearly would not apply to bar the claims in the Member Case because the issues regarding the force-placed insurance assessment have never been litigated. *See generally Copeland v. Merrill Lynch*, 47 F.3d 1415, 1423 (5th Cir. 1995). Likewise, based on the record before the Court the doctrine of judicial estoppel would not apply to bar the Member Case.

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" for the purpose of "protect[ing] the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (internal quotation marks omitted). "[T]he Supreme Court has refused to establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel . . . ." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (internal quotation marks omitted); *see also* Wright & Miller, Preclusion of Inconsistent Positions—Judicial Estoppel, 18B Fed. Prac. & Proc. Juris. § 4477 (2d ed. 2015)

("[Courts focus on] whether allowing a party to take seemingly inconsistent positions in separate actions would enable the party to gain an unfair advantage."); 18 James Wm. Moore et al., Moore's Federal Practice § 134.31 at 73 (3d ed. 2011) ("[The doctrine] should be applied flexibly, with an intent to achieve substantial justice."). In determining whether to apply this doctrine, courts may consider whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed*, 650 F.3d at 574. However, the presence of one or more of these elements does not mandate the invocation of judicial estoppel. "Because judicial estoppel is equitable in nature, trial courts are not required to apply it in every instance that they determine its elements have been met." Rather, courts should determine if applying judicial estoppel is appropriate in light of the specific facts of each case and the doctrine's purpose of "protect[ing] the integrity of the judicial process," preventing litigants from playing "fast and loose" with courts and avoiding unfair results and unseemliness. *Id.*; *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015).

Defendants have not cited any caselaw support for the proposition that simply omitting a previously pled claim from an amended complaint in federal court, without more, mandates the application of judicial estoppel to prevent a plaintiff from later pursuing this claim in a new state court action. Here, unlike in other cases where courts have found judicial estoppel based on pleadings, there are no deliberate, clear and unequivocal statements by Dr. Nassar that he had abandoned his force-placed insurance

claims when he filed his amended complaint in the Lead Case that did not include these claims. *Cf. Hardy v. City of Tupelo, Mississippi*, No. 1:08-CV-28, 2009 WL 1974693, at *1–2 (N.D. Miss. July 8, 2009) (applying judicial estoppel to bar the reassertion of claims where plaintiff stated in response to motion for summary judgment that "[plaintiff] abandons his claims under the Fourteenth Amendment and 42 U.S.C. § 1981 at this time [and] sues only under the First Amendment and Title VII" and the defendant acknowledged plaintiff's abandonment in its subsequent reply brief). [2]

At the very least there are fact issues that must be resolved before the Court can consider applying the equitable principles of estoppel, under any theory, to strike the Member Case. It is well established that as an equitable doctrine, estoppel requires that one who comes into equity must come with clean hands. If not, the doors of equity are closed to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper the behavior of the other party may have been. *See United States v. Lipscomb*, 982 F.3d 927, 930 (5th Cir. 2020); *see also Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945). Here, Dr. Nassar alleges that he only dropped the force-placed insurance claims from his amended complaint because he was misled by Defendants into believing that all assessments and fees related to the force-placed insurance would be refunded to him. (Dkt. 165 at pp. 5–12, 16–17). Dr. Nassar claims that Defendants did not provide him

---

[2] The Court also finds that the doctrine of "general estoppel" cannot apply to bar the Member Case because, for these very same reasons, Defendants could not have reasonably relied on the amended complaint to believe that Dr. Nasser had completely abandoned these claims. *See* Dkt. 152 at p. 14.

with the accounting records revealing this alleged deception until after it was too late for him to timely reassert his force-placed insurance claims in the Lead Case. On the other hand, Defendants categorically deny these assertions. Defendants argue that Dr. Nassar made a deliberate, calculated decision to abandon these claims in the Lead Case, in part, so he could attempt to bring the Lead Case in Texas state court. They assert that Dr. Nasser did not decide to resurrect these claims until it became apparent that the Lead Case might be dismissed.

The resolution of these fact issues is critical in determining whether Defendants are entitled to equitable relief regarding the filing of the member case. As courts have held, where neither party has "clean hands" the application of the equitable doctrines of estoppel is not warranted. *See, e.g., Pegg v. Steel Dynamics, Inc.*, No. 1:16-CV-241, 2018 WL 1247874, at *4 (N.D. Miss. Mar. 9, 2018). Under the circumstances of this case, whether estoppel applies to bar the Member Case is more appropriately resolved at trial, not by a motion to strike. Perhaps Dr. Nassar attempted to play "fast and loose" with the Court's rules by filing the Member Case. However, the conclusion that he did so is not established by the record currently before the Court. If facts supporting this conclusion are established at trial, the Court will reconsider the estoppel issues raised in the motion to strike.

Finally, the Court finds that striking or dismissing the Member Case on the grounds that its claims are time barred and/or moot is not warranted at this time and that adjudication of these issues will be more appropriate after the Court hears the pertinent testimony at trial.

## CONCLUSION

Accordingly, for the reasons discussed above, Defendants' motion to strike the Member Case is **DENIED WITHOUT PREJUDICE to being reasserted at the time of trial**. (Dkt. 152).

SIGNED at Houston, Texas, this 15th day of March, 2021.

                                               */s/ George C. Hanks, Jr.*
                                               GEORGE C. HANKS, JR.
                                               UNITED STATES DISTRICT JUDGE